**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN RE: ESTATE OF: GEORGIOS LOLOSIDIS<br><br>APPEAL OF: ANGELIKI GINOS | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 797 EDA 2025 |
|---|---|

Appeal from the Order Entered February 13, 2025
In the Court of Common Pleas of Delaware County Orphans' Court at No(s): 0767-2023-O

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED JULY 20, 2026**

Angeliki Ginos appeals from the orphans' court's February 13, 2025 order denying her petition for accounting, for turnover of Estate property, and for surcharge on the basis it was barred by the two-year statute of limitations under 42 Pa.C.S.A § 5524. After careful review, we affirm.

The trial court summarized the relevant facts of this case, as gleaned from the February 28, 2024 hearing transcript, as follows:

> George Lolosidis (Decedent) died on June 15, 2016. Prior to his death, Decedent and his agent Athanasia Papatzikas (Appellee) sold the property located at 177 West Girard Avenue, Philadelphia Pennsylvania 19123 on May 7, 2014 (the Property). The proceeds of the sale were then deposited into a joint bank account held between Appellee and Decedent. Appellee was

---

* Former Justice specially assigned to the Superior Court.

named as limited power of attorney over this sale of real estate by Decedent.

Attorney Rebecca Rosenberger Smolen (Attorney Smolen) testified that she was retained by Appellant to represent Appellant on a matter involving her sister, Appellee, as to not turning over money to their father, Decedent, before he died and then after he died, refusing to turn it over to her representative of the estate in a legal process in Greece. Attorney Smolen testified that her understanding was that Decedent lived in the U.S. for quite a long time, that he'd worked here, and he went back home to Greece before he died. Attorney Smolen testified that it was her understanding that Decedent had demanded Appellee turn over the money "many, many times" but Appellee refused.

Attorney Smolen testified that she wrote and sent a letter to Appellee on February 22, 2017. Attorney Smolen testified that in that letter, she demanded Appellee return the money and provide an accounting for it within 20 days. Attorney Smolen testified that her letter stated that if the matter could not be resolved outside of court, "we would have to go to court." The letter, admitted as P-4, states in part the following:

> I hope you will promptly cooperate with this demand as a moral matter between you and your sister without the need for any formal legal action. However, if you fail to do so, you will leave (Appellant) with no choice but to pursue this matter in the local courts. Should you impose this burden on [Appellant], she intends to Petition the Delaware County Orphans' Court to assess a significant surcharge against you for your breach of fiduciary duty to your father and to her, and she will explore the possibility of bringing criminal charges against you as well.

Appellee's attorney Harry Karapalides (Attorney Karapalides) would then reply to this letter on February 24, 2017. In the letter, admitted as P-5,

Attorney Karapalides advised Attorney Smolen of a contest to Decedent's Will occurring in Greece, and his belief that Appellant's demands and the letter written on February 22, 2017 were "premature." Attorney Karapalides stated that there should be no action filed with the Orphans' Court in Delaware County until the decision of the Greek court was made regarding the validity of Decedent's Will. Attorney Karapalides advised that should any filing be made in the Orphans' Court, Appellee would inform the Orphans' Court of the Greek action and "will most certainly stay your action pending the Greek Court decision." Attorney Karapalides stated in his letter that he would demand reimbursement of all fees, including attorney's fees because of his belief that any filing was premature. Lastly, Attorney Karapalides advised that Appellee would be willing to work to resolve the matter, but that it was "a two-way street." Specifically, Attorney Karapalides requested that Appellant "must also 'come clean' and inform [Attorney Smolen] of all monies and/or properties she received, provide an accounting of all assets and distributions that she made, and wait for the decision by the Greek Court."

Attorney Smolen testified that she believed that Attorney Karapalides was saying "hold your horses," which she testified that she had to consider due to the cost of proceeding in both the Greek Court and in the Delaware County Orphans' Court. Attorney Smolen testified that her opinion at the time was that they could proceed to dot their I's and cross their T's, but it would be risky in terms of the cost, because they might have to pay the other side's fees, and it may be for nothing if they could resolve amicably after the Will contest. Attorney Smolen testified that she was unaware that the money from the sale of the Property had been placed into a joint account between Appellee and Decedent until the answer to the petition had been filed.

On Cross Examination, Attorney Smolen stated that she told Attorney Karapalides that Attorney Smolen's agent would not provide an accounting because his client was not entitled to one. Attorney Smolen then

> testified that she and Appellant were proceeding under a power of attorney duty to account for Attorney Karapalides' client. Attorney Smolen then testified that the idea of waiting for the Greek Court's decision was Attorney Karapalides' opinion, not her opinion, and that she did not have to agree with Mr. Karapalides. It was a choice. Attorney Smolen testified that she believed it was reasonable to wait in her view as a legal matter.
>
> Attorney Karapalides testified that he did say to Attorney Smolen there shouldn't be an action filed in the Orphans' Court until the will contest was decided. Attorney Karapalides testified that Attorney Smolen and her client could have filed anything they wanted to. On Cross Examination, Attorney Karapalides testified that Decedent's name was on the check written for the sale of the Property. Attorney Karapalides testified that the only place that could be deposited is in a bank account with his name on it. Attorney Karapalides testified that the sale occurred two years and one month before Decedent died. Mr. Karapalides testified that he was never hired by Decedent to file anything against Appellee or Appellant to regain assets. Attorney Karapalides testified that Decedent never hired him to have Appellee file a petition for an accounting. Attorney Karapalides testified that he never received any other correspondence or anything after the April 11th, 2017 email, which is P-7. Attorney Karapalides testified that he figured that Attorney Smolen was not going to file anything in Delaware County. Attorney Karapalides testified that whenever you agree to something such as extending time or anything, that we would put it in writing, whether it's a conformation transmittal letter or a stipulation, and in this case, it's a statute being tolled, we'd put it in writing through a stipulation. Nothing was done after April 11th, 2017."

Trial court opinion, 7/2/25 (dated 6/1/25) at 2-5 (citations omitted).

The trial court set forth the relevant procedural history of this case as follows:

> On December 12, 2023, Appellant filed [a] petition for accounting, for turnover of Estate property, and for surcharge. A hearing was scheduled for January 31, 2024, which was rescheduled to February 28, 2024. After the hearing, the case was then scheduled for September 2024 trial term. Discovery was granted, and on August 26, 2024, a motion to enforce subpoena and for sanctions was filed by Appellant, though this would be withdrawn on September 17, 2024. In addition, the trial was moved from the September 2024 trial term to the February 2025 trial term. On February 12, 2025, the trial was held in which Appellant's petition was denied pursuant to 42 Pa.C.S.A § 5524. On March 13, 2025, Appellant filed her notice of appeal.

***Id.*** at 1-2 (extraneous capitalization omitted).[1]

Appellant raises the following issues for our review:

> 1. Whether the Orphans' Court erred as a matter of law by applying the civil 2 year statute of limitations of 42 Pa.C.S.A. § 5524 to the within Orphans' Court equitable action which involves breaches of fiduciary duty by an agent under a power of attorney, instead of following the directly controlling precedent of ***In Re: Estate of Leonard J. Moskowitz***, [115 A.3d 372 (Pa.Super. 2015), ***appeal denied***, 130 A.3d 1291 (Pa. 2015)] ("***Moskowitz I***") and ***In Re: Estate of Moskowitz***, [2017 WL 2645011 (Pa.Super. 2017) (non-precedential decision)] ("***Moskowitz II***"), holding that the equitable doctrine of laches applies to matters like the within action where an agent acting under a power of attorney transfers assets of the principal to a joint account making the agent a record joint owner of the principal's assets[?]
>
> 2. Assuming, ***arguendo***, that the 2 year statute of limitations of 42 Pa.C.S.A. § 5524 applies to the

---

[1] Appellant and the trial court have complied with Pa.R.A.P. 1925.

within matter, whether the Orphans' Court erred by disregarding that any such statute would have been tolled:

a. because the agent concealed that she had transferred the principal's assets to a joint account until after Appellant had filed her petition in the within matter;

b. because the agent represented through counsel after the death of the principal that she still retained the principal's assets in an agency capacity and would continue to hold them in that capacity until a Will Contest in Greece was resolved which resulted in detrimental reliance by Appellant and should equitably estop the agent from now denying the responsibility to turn over principal's assets; and

c. the within action was promptly commenced within six (6) months of the resolution of the Will Contest in Greece after the agent continued to refuse to turn over the principal's assets to the Appellant as the sole beneficiary of the principal's estate as a decedent.

3. Whether the Orphans' Court erred as a matter of law by allowing an agent, who clearly breached her fiduciary duties to the principal (and to the Appellant as the single beneficiary of the principal's estate after his death) by commingling principal's assets with her own in a joint account, to retain those wrongfully commingled assets?

4. Whether the Orphans' Court erred by disregarding the agent's breach of fiduciary duty and breach of contract under the explicit written terms of power of attorney which prohibited agent from controlling the disposition of any of principal's remaining assets upon his death and required that any of principal's assets held "in

trust" be returned to his estate at the time of his death?

5. Whether the Orphans' Court erred by failing to award summary judgment in favor of Appellant for turnover of $120,000 of principal's assets retained by agent considering that the within action was filed within six (6) months of the date that the Will Contest in Greece was resolved in favor of Appellant and against the agent and their one other sibling and the principles of equitable estoppel and detrimental reliance would preclude agent from claiming right to assets as surviving joint tenant?

6. Whether the Orphans' Court erred by failing to consider and award sanctions for legal fees and legal interest against agent and in favor of Appellant?

Appellant's brief at 3-6 (citation formatting amended).

Our standard of review of an orphans' court's decision is well settled:

> When an appellant challenges a decree entered by the orphans' court, our standard of review requires that we be deferential to the findings of the orphans' court.
>
> We must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

***Estate of J.L.C.***, 321 A.3d 999, 1003 (Pa.Super. 2024) (citation and brackets omitted).

Preliminarily, we note that Appellant waived his claim with regard to the doctrine of laches by failing to raise this claim before or during trial. ***See*** Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Our Supreme Court has recognized that,

> a Rule 1925(b) statement cannot resurrect an otherwise untimely claim or objection. Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance. Pennsylvania law is clear that claims and objections that are not timely made are waived.

***Steiner v. Markel***, 968 A.2d 1253, 1257 (Pa. 2009) (citations omitted).

Turning to Appellants' remaining claims, we discern no error on the part of the trial court in concluding that Appellant's petition was barred by the two-year statute of limitations under 42 Pa.C.S.A § 5524. The trial court addressed each of Appellant's allegations of error in this regard in its comprehensive, 17-page opinion and concluded that they are without merit. Following our thorough review of the record, including the briefs of the parties, we find that the trial court's conclusions are supported by competent evidence and are consistent with applicable law.

Accordingly, we adopt the relevant portions of the well-reasoned opinion of the Honorable Kathrynann W. Durham as our own for purposes of this appellate review. ***See*** trial court opinion, 7/2/25 (dated 6/1/25) at 6-16. We

hereby direct the parties to attach the trial court opinion to this Memorandum in all future proceedings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/20/2026

IN THE COURT OF COMMON PLEAS,
DELAWARE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: Estate of Georgios Lolosidis : No. 767-2023

**DURHAM, J.** **DATE:** 6/1/25

**OPINION**

Appellant Angeliki Ginos (Appellant) appeals from the February 13, 2025 Orphans' Court Decree. On February 13, 2025, Orphans' Court, after a hearing being held, issued a Decree denying Appellant's Petition for Accounting, for Turnover of Estate Property, and for Surcharge. On March 13, 2025, Appellant filed her Notice of Appeal. On March 18, 2025, the Orphans' Court, pursuant to Pa. R.A.P. 1925(b), ordered Appellant to file his Concise Statement of Matters Complained of on Appeal. On April 4, 2025, Appellant filed the aforementioned Statement.

**PROCEDURAL HISTORY**

On December 12, 2023, Appellant filed the Petition for Accounting, for Turnover of Estate Property, and for Surcharge. A hearing was scheduled for January 31, 2024, which was rescheduled to February 28, 2024.After the hearing, the case was then scheduled for September 2024 trial term. Discovery was granted, and on August 26, 2024, a Motion to Enforce Subpoena and for Sanctions was filed by Appellant, though this would be withdrawn on September 17, 2024. In addition, the trial was moved from the September 2024 trial term to the February 2025 trial term. On February 12, 2025, the trial was held

in which Appellant's petition was denied pursuant to 42 Pa.CSA §5524. On March 13, 2025, Appellant filed her Notice of Appeal. On March 18, 2025, the Orphans' Court, pursuant to Pa. R.A.P. 1925(b), ordered Appellant to file her Concise Statement of Matters Complained of on Appeal. On April 4, 2025, Appellant filed the aforementioned Statement.

**FACTUAL HISTORY**

George Lolosidis (Decedent) died on June 15, 2016. Prior to his death, Decedent and his agent Athanasia Papatzikas (Appellee) sold the property located at 177 West Girard Avenue, Philadelphia Pennsylvania 19123 on May 7, 2014 (the Property). The proceeds of the sale were then deposited into a joint bank account held between Appellee and Decedent. Appellee was named as limited power of attorney over this sale of real estate by Decedent.

Attorney Rebecca Rosenberger Smolen (Attorney Smolen) testified that she was retained by Appellant to represent Appellant on a matter involving her sister, Appellee, as to not turning over money to their father, Decedent, before he died and then after he died, refusing to turn it over to her representative of the estate in a legal process in Greece. *See* Notes of Testimony, 2-12-25 at 19-20. Attorney Smolen testified that her understanding was that Decedent lived in the U.S. for quite a long time, that he'd worked here, and he went back home to Greece before he died. *Id.* at 20. Attorney Smolen testified that it was her understanding that Decedent had demanded Appellee turn over the money "many, many times" but Appellee refused. *Id.*

Attorney Smolen testified that she wrote and sent a letter to Appellee on February 22, 2017. *Id.* at 25. Attorney Smolen testified that in that letter, she demanded Appellee

return the money and provide an accounting for it within 20 days. *Id.* at 30. Attorney Smolen testified that her letter stated that if the matter could not be resolved outside of court, "we would have to go to court." *Id.* at 31. The letter, admitted as P-4, states in part the following:

> I hope you will promptly cooperate with this demand as a moral matter between you and your sister without the need for any formal legal action. However, if you fail to do so, you will leave (Appellant) with no choice but to pursue this matter in the local courts. Should you impose this burden on Angeliki, she intends to Petition the Delaware County Orphans' Court to assess a significant surcharge against you for your breach of fiduciary duty to your father and to her, and she will explore the possibility of bringing criminal charges against you as well.

Appellee's attorney Harry Karapalides (Attorney Karapalides) would then reply to this letter on February 24, 2017. *See* Notes of Testimony, 2-12-25 at 31. In the letter, admitted as P-5, Attorney Karapalides advised Attorney Smolen of a contest to Decedent's Will occurring in Greece, and his belief that Appellant's demands and the letter written on February 22, 2017 were "premature." Attorney Karapalides stated that there should be no action filed with the Orphans' Court in Delaware County until the decision of the Greek court was made regarding the validity of Decedent's Will. Attorney Karapalides advised that should any filing be made in the Orphans' Court, Appellee would inform the Orphans' Court of the Greek action and "will most certainly stay your action pending the Greek Court decision." Attorney Karapalides stated in his letter that he would demand reimbursement of all fees, including attorney's fees because of his belief that any

filing was premature. Lastly, Attorney Karapalides advised that Appellee would be willing to work to resolve the matter, but that it was "a two-way street." Specifically, Attorney Karapalides requested that Appellant "must also 'come clean' and inform [Attorney Smolen] of all monies and/or properties she received, provide an accounting of all assets and distributions that she made, and wait for the decision by the Greek Court."

Attorney Smolen testified that she believed that Attorney Karapalides was saying "hold your horses," which she testified that she had to consider due to the cost of proceeding in both the Greek Court and in the Delaware County Orphans' Court. *See* Notes of Testimony, 2-12-25 at 34. Attorney Smolen testified that her opinion at the time was that they could proceed to dot their I's and cross their T's, but it would be risky in terms of the cost, because they might have to pay the other side's fees, and it may be for nothing if they could resolve amicably after the Will contest. *Id.* at 48-49. Attorney Smolen testified that she was unaware that the money from the sale of the Property had been placed into a joint account between Appellee and Decedent until the answer to the petition had been filed. *Id.* at 52-53.

On Cross Examination, Attorney Smolen stated that she told Attorney Karapalides that Attorney Smolen's agent would not provide an accounting because his client was not entitled to one. *Id.* At 78. Attorney Smolen then testified that she and Appellant were proceeding under a power of attorney duty to account for Attorney Karapalides' client. *Id.* Attorney Smolen then testified that the idea of waiting for the Greek Court's decision was Attorney Karapalides' opinion, not her opinion, and that she did not have to agree with Mr. Karapalides. It was a choice. *Id.* At 82. Attorney Smolen testified that she believed it was reasonable to wait in her view as a legal matter. *Id.* At 83.

Attorney Karapalides testified that he did say to Attorney Smolen there shouldn't be an action filed in the Orphans' Court until the will contest was decided. *Id.* At 95. Attorney Karapalides testified that Attorney Smolen and her client could have filed anything they wanted to. *Id.* At 96. On Cross Examination, Attorney Karapalides testified that Decedent's name was on the check written for the sale of the Property. *Id.* At 101. Attorney Karapalides testified that the only place that could be deposited is in a bank account with his name on it. *Id.* Attorney Karapalides testified that the sale occurred two years and one month before Decedent died. *Id.* Mr. Karapalides testified that he was never hired by Decedent to file anything against Appellee or Appellant to regain assets. *Id.* at 114. Attorney Karapalides testified that Decedent never hired him to have Appellee file a petition for an accounting. *Id.* Attorney Karapalides testified that he never received any other correspondence or anything after the April 11th, 2017 email, which is P-7. *Id.* at 115. Attorney Karapalides testified that he figured that Attorney Smolen was not going to file anything in Delaware County. *Id.* at 117. Attorney Karapalides testified "that whenever you agree to something such as extending time or anything, that we would put it in writing, whether it's a conformation transmittal letter or a stipulation, and in this case, it's a statute being tolled, we'd put it in writing through a stipulation. Nothing was done after April 11th, 2017." *Id.*

**ISSUES ASSERTED ON APPEAL**

Appellant asserts the following issues on appeal:

1. Whether the Orphans' Court erred by applying the civil 2 year statute of limitations of 42 Pa.C.S.A.§5524 to the within equitable action which involved breaches of fiduciary duty by an agent under a power of attorney instead of

following the directly controlling precedent of *In Re: Estate of Leonard J. Moscowitz, Dec'd*, No. 3302 EDA 2012, 2015 PA Super 23, 115 A.3d 372 (Pa. Super Ct. 2015), *In re Estate of Moskowitz*, J-A06015-17 (Pa. Super. Ct. Jun. 20, 2017) holding that the equitable doctrine of laches applies to matters like the within action where an agent acting a power of attorney transfers assets of the principal to a join account making the agent a record joint owner of the principal's assets.

2. Assuming, arguendo, that the 2 year statute of limitation of 42 Pa.C.S.A.§5524 applies to the within matter, whether the Orphans' Court erred by disregarding that any such statute would have been tolled:

a. because the agent concealed that she had transferred the principal's assets to a joint account until after Appellant had filed her petition in the within matter;

b. because agent represented through counsel after the death of the principal that she still retained principal's assets in an agency capacity and would continue to hold them in that capacity until a will contest in Greece was resolved; and

c. the within action was promptly commenced within six (6) months of the resolution of the will contest in Greece after the agent continued to refuse to turn over the principal's assets to the Appellant as the sole beneficiary of the principal's estate.

3. Whether the Orphans' Court erred by allowing an agent, who clearly breached her fiduciary duties to the principal (and the Appelant as the single

beneficiary of the principal's estate after his death) by commingling principal's assets with her own in a joint account, to retain those wrongfully comingled assets?

4. Whether the Orphans' Court erred by failing to equitably estop agent from wrongfully retaining assets which she had represented, through counsel, she would continue to hold in her fiduciary capacity as agent for the estate of the deceased principal, until the resolution of a will contest that she brought in Greece, and then, after losing the will contest in Greece, and after her representation had been detrimentally relied on by Appellant, changed her position to a new one of personal entitlement as a surviving joint account owner?

5. Whether the Orphans' Court erred by disregarding the agent's breach of fiduciary duty and breach of contract under the explicit written terms of power of attorney which prohibited agent from directing disposition of any of principal's remaining assets upon his death?

6. Whether the Orphans' Court erred by failing to award summary judgement in favor of Appellant for turnover of $120,000 of principal's assets retained by agent considering that the within action was filed within six (6) months of the date that the will contest was resolved in favor of Appellant and against the agent and their one other sibling?

7. Whether the Orphans' Court erred by failing to consider and award sanctions for legal fees and legal interest against agent and in favor of Appellant?

8. Whether the Orphans' Court erred in rendering a decision from the bench before Appellant/Petitioner had been able to conclude the presentation of all witnesses and evidence to support her case in chief and without any opportunity

for Appellant/Petitioner to brief the legal issue on which the Court ruled or any other legal issue before the court?

## DISCUSSION

Rule 1925(b) of The Pennsylvania Rules of Appellate Procedure sets forth the requirements in filing a Rule 1925(b) statement. "Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." *Kanter v. Epstein*, 2004 PA Super 470, ¶ 13, 866 A.2d 394, 400 (2004) citing *Riley v. Foley*, 783 A.2d 807, 813 (Pa. Super. 2001). Due to 1925(b)'s importance, this Court has previously stated that 1925(b) statements must not be "so lengthy that it does not meet the goal of narrowing down the issues previously raised to the few that are likely to be presented to the appellate court without giving the trial judge volumes to plow through." *Arnoldy v. Forklift L.P.*, 927 A.2d 257, 261 n.1 (Pa. Super. 2007), *Commonwealth v. Reeves*, 907 A.2d 1, 3 (Pa. Super. 2006). Also, as stated in Rule 1925(b), a Rule 1925(b) should "not be redundant or provide lengthy explanations as to any error." Pa. R.A.P. 1925(b)(4)(i, iv). The Court in *Satiro v. Maninno* noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many issues impossible. *Satiro v. Maninno*, 2020 PA Super 185, 237 A.3d 1145, 1150–51 (2020). The Superior Court also stated that "this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues . . ." when the appellant in that case filed a seven-page 1925(b) statement that included approximately twenty-nine issues. *Jones v. Jones*,

878 A.2d 86, 90 (Pa.Super. 2005). Jones further elaborated that a Concise Statement which is "written in narrative form" and provides "unnecessary background information" does not conform with Rule 1925(b). *Id* at 89.

Appellant's statement is not concise, nor does it clearly set forth the errors on appeal. This is evident by the fact that several of the issues simply are not relevant to the appeal of the Orphans' Court ruling, which held that the statute of limitations had been violated by Appellant. Rather, Appellant raises issues that address, for example, why the Orphans' Court did not grant summary judgment in favor of Appellant or grant Appellant sanctions against Appellee.

**I. 1. The Doctrine of Laches Issue should be Waived because It Fails to Follow the Pennsylvania Rule of Appellate Procedure 302.**

The Pennsylvania Rule of Appellate Procedure 302 in pertinent part states as follows:

> Rule 302 Requisites for Reviewable Issue
>
> (a) General rule—Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.

On appeal, Appellant raises the equitable doctrine of laches, specifically citing *In Re: Estate of Leonard J. Moscowitz, Dec'd*, No. 3302 EDA 2012, 2015 PA Super 23, 115 A.3d 372 (Pa. Super Ct. 2015), *In re Estate of Moskowitz*, J-A06015-17 (Pa. Super. Ct. Jun. 20, 2017). The Pennsylvania Rules of Appellate Procedure specify that issues that are not first raised in the trial court are waived on appeal. *Commonwealth v. Strunk*, 953 A.2d 577 (2008). The Orphans' Court believes this issue should be waived because Appellant did not address this issue at trial or in any pleadings. It is first brought up in

Appellant's 1925(b) concise statement, and counsel for Appellee has not had time to address this issue in court.

The Doctrine of Laches was invoked by Appellee against Appellant as an affirmative defense in her answer to Appellant's petition. However, that is a totally different issue as, again, it was Appellee raising the doctrine, not Appellant, as an affirmative defense. Moreover, in Appellant's response to new matter/affirmative defenses, Appellant states that she believes that the statute has been tolled by "the Discovery Rule and the doctrines of equitable tolling and fraudulent concealment." Appellant does not mention Laches, which she now seeks to raise on appeal. Addressing this argument after the trial puts the Orphans' Court and Appellee in an impossible and unfair position. Therefore, this issue should be deemed waived because the Orphans' Court should have been given the opportunity to decide this issue prior to or during the trial. Therefore, pursuant to Pa. R.A.P. 302(a), this issue should be waived.

## II. **2 a-c. The Orphans' Court was Correct in Applying the 2 Year Statute of Limitation of 42 Pa.C.S.A. §5524.**

In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion. *Kapil v. Association of Pa. State College and Univ. Faculties*, 504 Pa. 92, 470 A.2d 482, 485 (Pa. 1983). The Supreme Court of Pennsylvania stated in *Pocono International Raceway, Inc. v. Pocono Produce, Inc* that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d

468, 471 (Pa. 1983). In this case, 42 Pa.C.S.A. §5524 is the relevant statute of limitation, which states the following:

> **§ 5524. Two year limitation.**
>
> The following actions and proceedings must be commenced within two years:
>
> (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
>
> (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.
>
> (3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.
>
> (4) An action for waste or trespass of real property.
>
> (5) An action upon a statute for a civil penalty or forfeiture.
>
> (6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon on execution or otherwise in his possession.
>
> (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

(8) An action to recover damages for injury to a person or for the death of a person caused by exposure to asbestos shall be commenced within two years from the date on which the person is informed by a licensed physician that the person has been injured by such exposure or upon the date on which the person knew or in the exercise of reasonable diligence should have known that the person had an injury which was caused by such exposure, whichever date occurs first.

Appellant first demanded the turnover of the funds from the sale of the Property in a letter dated February 22, 2017, as evidenced by the letter that Attorney Smolen wrote and submitted into evidence at trial as exhibit P-4. In this letter, Attorney Smolen states that Appellee has unlawfully retained assets of Decedent, including $186,000 of proceeds from the sale on May 7, 2014 of the Property. This is, at the latest, the day that the statute began to run because it shows that Appellant was aware of the allegedly unlawful taking of Decedent's property. In this letter, Attorney Smolen also states that failure to cooperate would lead to Appellant pursuing the matter in local courts. Specifically, that she would file a petition in the Delaware County Orphans' Court, and would explore the possibility of bringing criminal charges against Appellee as well. Not only does this show that Appellant was aware of the alleged unlawful taking, but that she would seek legal action if Appellee did not cooperate with them. This would therefore mean that Appellant waited, at minimum, 7 years to bring these claims when she was required to file within 2 years in order to not violate the statute of limitation.

Appellant attempts to get around this by arguing that Appellee agreed to toll the statute and wait until the conclusion of the Will Contest in Greece before Appellant brought any claim. While this would be a way to toll a statute of limitations, the simple fact is that no such agreement occurred here. In Attorney Karapalides February 24, 2017 letter, Attorney Karapalides does state his opinion that "there should be no action filed with the Orphans' Court in Delaware County until a decision as to the validity of the Will is made in the Greek courts." However, Attorney Karapalides also states in his letter that his client is willing to work to resolve the matter, but that "this is a two-way street." Attorney Karapalides specifically stated that he would require an accounting from Appellant.

Attorney Smolen's response letter dated March 7, 2017 states that Appellant has no obligation to account to Appellee because Appellant did not serve as an agent of Decedent. Attorney Smolen also states in this letter that if Appellee continued to retain Decedent's assets and not provide an accounting, Appellant would have no choice but to proceed with legal action in Delaware County. The letter also states, "[W]hether or not the Greek probate is contested, my view is that my client will have standing as an heir of her father's estate to proceed with an action against your client-whether in the Orphans' Court, Criminal Court, or both."

Attorney Karapalides' response once again requests an accounting. Other than these letters, there is no other evidence of an agreement signed in writing that would demonstrate any agreement to toll the statute of limitations until the will contest in Greece concluded. Seeing no evidence of an agreement to toll the statute of limitations, the Orphans' Court concluded that Appellant violated the statute of limitations and granted judgment in favor of Appellee.

Appellant also argues in subsection 2.a. that the statute should be tolled based on the doctrine of concealment. The doctrine of fraudulent concealment serves to toll the running of the statute of limitations. The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. *Fine v. Checcio*, 870 A.2d 850 (2005), quoting *Deemer v. Weaver*, 187 A. at 215. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. *Id.* The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. *Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792, 794 (Pa. 1987).

In *Fine v. Checcio*, the Pennsylvania Supreme Court took the view that the standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment. *Fine v. Checcio*, 870 A.2d 850, 861 (2005). Thus, the Supreme Court concluded that a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause. *Id.*

As has been established above, Appellant knew of the alleged taking of Decedent's assets from the sale of the Property by Appellee as of February 2017. However, Appellant claims that she did not know that the account was held in a joint account until after Appellant filed the petition, which was filed on December 12th, 2023. This still does not get Appellant around the fact that had she exercised reasonable

diligence and filed her petition within the statute of limitations, she would have known about the joint account because Appellee admits that the funds are held in a joint account in the first paragraph of her answer to Appellant's petition. It is thus difficult to see how this doctrine even applies as there was no concealment: Appellee freely admitted to the account being held jointly by Appellee and Decedent. More importantly, Appellant was seeking the return of the funds which Appellant clearly knew about as of February 2017.

Moreover, the alleged "concealment" did not prevent Appellant from having Attorney Smolen write a letter to Appellee demanding the return of the funds and stating that she would pursue this matter in Delaware County courts, both Orphans' Court and potentially Criminal Court, if the Appellee did not cooperate. Thus, Appellant clearly knew of her alleged injury, that being the funds from the sale of the Property which were being held by Appellee, and would have known that the account was held jointly if Appellant had filed the petition within the statute of limitation's time frame of two years. Therefore, this argument is without merit as there is no evidence that Appellee was concealing the joint account, nor is it particularly relevant to the fact that Appellant did not file the petition within the two-year time frame. In other words, Appellant should have known to file the petition regardless of any concealment of the joint bank account, because she knew of her injuries as of February 22, 2017.

**III. 3-5. These Issues are all Irrelevant to the Issue being Raised on Appeal.**

Appellant has appealed the Orphans' Court ruling that Appellant violated the relevant statute of limitation. None of these issues address this and therefore are irrelevant to the issue being raised on appeal.

## IV. 6-7. The Orphans' Court was Correct in not ruling for Appellant in her Motion for Summary Judgment.

Appellant argues that Orphans' Court should have granted her Motion for Reconsideration, in which Appellant requested summary judgment and additional fees. There are several reasons why Orphans' Court did not do this. First, what was argued in the Motion for Reconsideration was not relevant to the Statute of Limitations argument. Second, Appellant's Notice of Appeal was docketed before the time for Appellee to respond to Appellant's Motion for Reconsideration had expired, meaning Appellee still had time to respond to the Motion for reconsideration.

Third, it would have been impossible to grant Summary Judgment after the trial had occurred. Pa. R.Civ.P. Rule 1035.2. makes it clear that a Motion for Summary Judgment is to be made after pleadings close "but within such time as not to unreasonably delay trial." To rule on a Motion for Summary Judgment filed after the trial is concluded and a judgment issued would be violative of this rule.

## VI. 8. The Orphans' Court properly ruled on the Motion to Dismiss at the Close of Appellant's Case

The time when Appellant should have raised this issue that they had not concluded the presentation of all of their witnesses and evidence was when the Appellee made the Motion to Dismiss. Appellant was given the opportunity to respond to the Appellee's Motion and provided the Orphans' Court with its legal argument as to why they believed the Motion should not be granted.

Appellant never argued that it was not finished presenting its case or that Appellant wanted to file a brief. Appellant states at the end of its argument "[a]nd with that, I have no further argument." After the Orphans' Court rendered its decision, Appellant asked to file a brief. It would be entirely improper to permit the Appellant to file a brief after the Orphans Court rendered its decision.

In addition, the Orphans' Court relied on exhibits submitted by Appellant to form its opinion. Attorney Smolen testified that she wrote and sent a letter to Appellee on February 22, 2017 where she demanded Appellee return the money and provide an accounting for it within 20days. It is clear from Appellant's evidence and testimony that Appellant knew Appellee had possession of the money. Appellant did file the Petition for Accounting, for Turnover of Estate and for surcharge until December 12, 2023. Therefore, Appellant did not file within the 2-year statute of limitations.

Therefore, this issue is without merit.

## CONCLUSION

For the aforementioned reasons, the Orphans' Court respectfully requests that its decision in this matter be **AFFIRMED.**

**BY THE COURT:**

Durham

**KATHRYNANN W. DURHAM, J.**